# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# HELENA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　Plaintiff,<br><br>vs.<br><br>PAUL ANTHONY LAFOURNAISE,<br><br>　　　　　　　Defendant. | CR 6:24-19-BMM-1<br><br><br>FINDINGS OF FACT,<br>CONCLUSIONS OF LAW, AND<br>VERDICT |

The Government charged the Defendant, Paul Anthony LaFournaise, with possession of a firearm in violation of 18 U.S.C. § 922(g)(1). (Doc. 2.) LaFournaise waived his right to a jury trial on November 21, 2024. (Doc. 31.) The Court conducted a bench trial on Monday, November 25, 2024. (Doc. 37.) For the following reasons, the Court finds Paul Anthony LaFournaise guilty of possession of a firearm in violation of 18 U.S.C. § 922(g)(1), as set forth in the Indictment.

## FINDINGS OF FACT

The following findings of fact are based upon the testimony of witnesses and exhibits admitted at trial.

1.　　The Government presented witness testimony from Paul LaFournaise's family members, including his mother, Margery LaFournaise, and siblings, Michael LaFournaise and Janet Parrish. Janet testified that she had found

1

a gun, hidden it from Paul, and reported Paul's aggressive reaction to discovering the missing gun. Margery and Michael also testified regarding Paul's behavior and statements. All were subject to cross-examination. The Court finds credible the testimony of the Government's witnesses Margery, Janet, and Michael.

2.  The Government presented the witness testimony of Todd Johnson. Todd testified that he had given Paul a KelTec 9mm handgun on two occasions and that on the second occasion in March 2024, Paul refused to return the gun to Todd. Todd admitted to having purchased the gun from a guy on the street in Bozeman for $200. Todd was subject to cross-examination. Todd readily admitted to having a prior felony conviction and to having served time with Paul at the Pre-Release Center in Butte, Montana. The Court finds credible the testimony of the Government's witness Todd Johnson.

3.  The Government presented witness testimony of Deputy Benjamin Fox and Deputy Daniel Cagle that responding officers recovered the KelTec 9mm from Margery's house. The Government introduced the KelTec 9mm and photographs of the KelTec and its ammunition as exhibits. Cross examination raised no concerns about the officers' recovery of the KelTec 9mm, officers' process of entering the KelTec 9mm into evidence, or officers' response to reports

of the domestic dispute at Margery's house. The Court finds the testimony of Deputy Fox and Deputy Cagle to be credible.

4.   Finally, the Government presented testimony of State Probation Officer McKenzie Lyons and ATF Agent Caleb Enk. The Court finds credible the testimony of the Government's witnesses Officer Lyons and Agent Enk. Officer Lyons owned up to her mistake in assuming that the interview with Paul was being recorded. Paul raised no serious doubts on cross-examination to challenge the officers' testimony that Officer Lyons had provided Paul with *Miranda* warnings before starting the interview and that Paul had agreed to talk.

5.   Paul LaFournaise lived in a furnished shed belonging to his mother, Margery LaFournaise, on her property in Boulder, Montana. Two of Paul's siblings, Michael LaFournaise and Janet Parrish, also lived in Margery's house with her.

6.   Janet searched for a hose nozzle in a blue canvas structure used as a garden shed in the yard of her mother's property on May 11, 2024. Janet found a black bag covered by a sweatshirt in a flowerpot or planter in the garden shed.

7.   Janet picked up the sweatshirt. She saw what appeared to be Narcan in the black bag underneath the sweatshirt. Janet was concerned because she knew Paul had a history of using drugs.

3

8. Janet brought the black bag inside the house and dumped the contents onto the kitchen table in front of Margery. The bag contained various items, including what appeared to be drugs, drug paraphernalia, Narcan, and a handgun.

9. Janet hid the items from the black bag in three different locations: she put the Narcan and drugs in her room; she put the black bag and drug paraphernalia in the bathroom cabinet under the sink; and she put the gun on top of a curio cabinet surrounded by a wooden lip or bib.

10. Neither Janet nor Margery had seen the gun before Janet dumped it from the black bag onto the kitchen table. The gun did not belong to Margery or Janet.

11. Paul LaFournaise returned home from work later that same day. Paul soon became agitated because he claimed someone had taken his things. Janet and Michael testified that Paul became increasingly aggressive throughout the conversation.

12. Janet and Margery testified that as the conversation progressed, Paul said that someone had taken his black bag. Paul eventually declared that his gun had been in the black back. Paul accused Janet of having taken it. Janet and Margery recalled Paul having mentioned the price of bullets during the

conversation. Janet and Michael testified that Paul became increasingly agitated and threatened Janet.

13. Janet left the house and drove to the Jefferson County Sheriff's Office to make a report. Janet and Deputy Cagle testified regarding Janet's report. Janet reported to Deputy Cagle that Paul had been threatening her. Janet did not report to Deputy Cagle that she had found a gun at that time. Janet explained at trial that she did not want to disclose the location of the gun while Paul was still at Margery's house.

14. Michael LaFournaise asked Paul if he owned the gun. Paul confirmed to Michael that the gun belonged to him. Paul claimed to Michael that he had a concealed carry license for the gun and that the gun was registered to him.

15. Michael told Paul to stop threatening Janet. The altercation between Michael and Paul escalated. Michael punched Paul in the face and broke his nose. Paul called 911 to report the domestic dispute. Officers responded to Margery's house. Officers arrested Paul and removed him from Margery's house.

16. Janet returned to Margery's house. Janet gave responding officers at Margery's house the black bag and the items it had contained, including the gun. Janet explained to the officers the origin of the black bag and its contents. Janet

informed the officers of the conversation with Paul regarding the black bag and the gun.

17. Deputy Fox and Deputy Cagle identified the firearm as a KelTec 9mm handgun, Serial Number SG349. The KelTec was loaded with 9mm ammunition. The deputies maintained the chain of custody for the KelTec 9mm, the black bag, and the other items contained within the bag.

18. The KelTec 9mm originally belonged to Todd Johnson, a friend of Paul's. Todd purchased the gun in Bozeman for $200.

19. Todd testified that Paul had "bulldogged" Todd into lending him the KelTec 9mm the first time in February 2024. Paul returned the KelTec to Todd shortly after.

20. Todd testified that Paul had "strongarmed" Todd into giving him the KelTec 9mm a second time in March 2024. Paul refused to return the gun to Todd despite repeated requests from Todd. Todd testified that Paul claimed to have given the gun to his mother and that the gun had been placed in a safe at Margery's house.

21. Todd asked Paul repeatedly to return the gun to him. During one such conversation in the first week of May, Paul told Todd to stop asking about the gun

because it was a "done deal." Paul indicated that he would not be returning the KelTec 9mm to Todd.

22. Todd's testimony that he gave Paul the KelTec in March 2024, that Paul kept the gun, and that Paul refused to return the gun demonstrates that Paul had control of the KelTec 9mm. Janet testified that she discovered the KelTec 9mm on May 11, 2024, that she hid the gun from Paul, and that Paul reacted aggressively when he found it to be missing. This witness testimony indicates that Paul had possession of the KelTec 9mm on May 11, 2024.

23. Officer Lyons testified that Paul LaFournaise had been convicted of a felony in 2020, 2015, and 2012. Paul was on state probation on May 11, 2024, for a felony conviction punishable by a term of imprisonment for more than one year.

24. Paul had signed forms acknowledging that he understood his conditions of probation. Paul had signed a separate condition sheet explaining in detail that as a person convicted of a felony, he was prohibited from possessing firearms. The Government introduced these forms as exhibits. Officer McKenzie Lyons testified that Paul signed and acknowledged that he understood the contents of the forms and knew he could not possess firearms.

25. Officer Lyons and ATF Agent Caleb Enk interviewed Paul after his arrest for the domestic dispute. Officer Lyons and Agent Enk testified that Officer

7

Lyons provided Paul with *Miranda* warnings before starting the interview. Officer Lyons and Agent Enk testified that Paul agreed to be interviewed after having received *Miranda* warnings.

26. Officer Lyons testified that she mistakenly had assumed that the interview with Paul was being recorded as it was taking place in an interview room at the office of the Jefferson County Sheriff. The Court finds nothing in the duration of the interview or the description of the interview by Officer Lyons and Agent Enk to raise concerns about any coercion or potential violation of Paul's right against self-incrimination. Paul raised no serious concerns at trial about alleged coercion during the interview or to challenge the testimony of Officer Lyons that she had provided Paul with *Miranda* warnings before starting the interview.

27. Paul admitted to the officer that he had been "holding on" to the KelTec 9mm and the black bag for Todd Johnson. Paul described the black bag as a "broker bag." Officer Lyons testified that Paul claimed to have placed the black bag with the KelTec 9mm in the flowerpot in the blue garden shed at his mother's house before he left for work on May 11, 2024. Officer Lyons and Agent Enk testified that Paul claimed to have discovered the black bag to be missing when he returned to Margery's house after work on May 11, 2024.

28.     ATF Agent Enk testified that the KelTec 9mm had been manufactured in Florida. The KelTec 9mm was found in the shed on Margery LaFournaise's property in Montana on May 11, 2024.

## CONCLUSIONS OF LAW

29.     "[A] defendant's *confession* requires some independent corroborating evidence in order to serve as the basis for a conviction." *United States v. Lopez-Alvarez*, 970 F.2d 583, 589 (9th Cir. 1992) (original emphasis). To satisfy the *corpus delicti* rule, the Government first must introduce "sufficient evidence to establish that the criminal conduct at the core of the offense has occurred." *Id.* at 592. Second, the Government must introduce "independent evidence tending to establish the trustworthiness of the admissions, unless the confession is, by virtue of special circumstances, inherently reliable." *Id.*

30.     In *United States v. Adams*, the only evidence supporting Adams's conviction for possession of a firearm was "the testimony of the officers that the gun was found in a jacket and that Adams ultimately admitted possession of the weapon." 583 F.3d 457, 470 (6th Cir. 2009). No one among the group of seven to ten people in the motel room where the gun had been found in a jacket claimed any connection to the gun or the jacket. *Id.* Without corroboration, a defendant's

9

admissions and the "mere presence of the gun" proved insufficient to establish that the defendant had committed the crime of illegally possessing a firearm. *Id.*

31. The Court deems Defendant's *corpus delicti* argument misplaced in this instance. No evidence corroborated the defendant's eventual admissions to ownership of the gun found in the motel room in *Adams*. The Government presented evidence through the testimony of Todd Johnson that Todd had given the KelTec 9mm to Paul a second time in March 2024. Todd Johnson testified that Paul had refused to return the gun to Todd.

32. The Government presented evidence through Janet's testimony that she had discovered the KelTec 9mm in a blue garden shed on Margery's property accessible to Paul on May 11, 2024. Janet hid the contents of the bag in three locations in Margery's house. The Government presented the testimony of Paul's family members, including Janet and Michael, that Paul had reacted aggressively when he returned home and discovered the black bag and the KelTec 9mm to be missing.

33. The Government presented sufficient evidence that a crime—possession of a firearm by a prohibited person—occurred on or about May 11, 2024. Janet testified that she found the KelTec 9mm in the blue garden shed at Margery's home. Todd testified that he had given the KelTec 9mm to Paul in

March 2024 and that Paul repeatedly refused to run the gun to Todd. Sufficient independent, circumstantial evidence indicates that Paul LaFournaise possessed the KelTec 9mm on or about March 11, 2024. *See United States v. Niebla-Torres*, 847 F.3d 1049, 1056–57 (9th Cir. 2017) (determining that government had introduced sufficient independent, circumstantial evidence to corroborate defendant's conviction for conspiracy to assist drug traffickers in light of the remote location where defendant had been found, defendant's possession of hand-held radios and cellular phones of the type used by drug traffickers, and the testimony by an officer that drug traffickers use these devices to "to observe law enforcement movement"); *United States v. Gonzalez-Godinez*, 89 F.4th 1205, 1210 (9th Cir. 2024), cert. denied, No. 23-7780, 2024 WL 4427104 (U.S. Oct. 7, 2024) (defendant's alienage admission corroborated by independent, circumstantial evidence of his behavior at the border, the fact that the defendant made the admission twice, and the correlation between specific details of his admission and the conditions of his arrest).

34. Even if Paul LaFournaise's admissions were the only evidence against him, the circumstances of his statements support their inherent reliability. Like in *Lopez-Alvarez* and *Gonzalez-Godinez*, independent evidence verified the details of LaFournaise's statements and demonstrated LaFournaise's knowledge of the

11

crime. *Lopez-Alvarez*, 970 F.2d at 593; *Gonzalez-Godinez*, 89 F.4th at 1210. LaFournaise admitted that he had hidden the gun and the black bag in the planter in the blue garden shed before leaving for work on May 11, 2024. Janet testified that she had found the gun in the planter in the shed that same day. Officer Lyons testified that LaFournaise had described the bag as a "broker bag." This detail comports with the drugs and paraphernalia Janet found in the bag with the gun.

35. LaFournaise admitted to Officer McKenzie Lyons and Agent Caleb Enk that LaFournaise had been "holding" the firearm for Todd Johnson. Johnson confirmed through his testimony that he had given LaFournaise the KelTec 9mm a second time in March 2024, and that LaFournaise had refused to return the KelTec 9mm to Johnson.

36. No evidence contradicted the testimony of Officer Lyons that Paul knew he had been prohibited from possessing firearms after his felony convictions and that Paul had signed informational forms to that effect.

37. The Court concludes that a defendant commits the offense of possession of a firearm in violation of 18 U.S.C. 922(g)(1) if the Government proves the following elements beyond a reasonable doubt: (1) the defendant knowingly possessed a firearm; (2) the firearm had been transported from one state to another; (3) at the time the defendant possessed the firearm, the defendant had

been convicted of a crime punishable by imprisonment for a term exceeding one year; and (4) at the time the defendant possessed the firearm, the defendant knew he had been convicted of a crime punishable by imprisonment for a term exceeding one year. Manual of Model Criminal Jury Instructions for the District Courts of the Ninth Circuit, No. 14.16, Firearms—Unlawful Possession (18 U.S.C. § 922(g)(1)) (2022 ed., updated June 2024).

38.  The Government bears the burden to prove the following elements beyond a reasonable doubt: (1) that LaFournaise knowingly possessed the KelTec 9mm handgun, Serial Number SG349, on or about May 11, 2024; (2) that the KelTec 9mm had been transported from another state to Montana; (3) that at the time LaFournaise possessed the KelTec 9mm, he had been convicted of a crime punishable by imprisonment for a term exceeding one year; and (4) that at the time LaFournaise possessed the KelTec 9mm, he knew he had been convicted of a crime punishable by imprisonment for a term exceeding one year.

39.  The Government met the first element through the testimony of Todd Johnson, Margery, Janet, and Michael. The Government presented evidence through the testimony of Todd Johnson that Johnson had given Paul LaFournaise the KelTec 9mm in March 2024. Todd Johnson also testified that Paul LaFournaise refused to return the KelTec 9mm to Johnson. The Government presented evidence

that Janet discovered the KelTec 9mm in the blue garden shed on Margery's property on May 11, 2024. Janet testified that she had hidden the gun and the contents of the black bag from Paul. Janet and Michael testified that Paul had reacted aggressively when he discovered the black bag and KelTec were missing.

40. This evidence corroborates Paul's admissions that the KelTec belonged to him and that he had placed it in the blue garden shed. Paul made these admissions to Margery, Michael, Janet, ATF Agent Enk, and Probation Officer Lyons. Paul's statements and behavior also indicate that Paul knowingly exercised control over the KelTec 9mm.

41. The Government proved beyond a reasonable doubt that Paul LaFournaise knowingly possessed a KelTec 9mm pistol, Serial Number SG349, on or about May 11, 2024.

42. The Government met the second element through the testimony of ATF Agent Enk. Agent Enk testified that the KelTec 9mm, Serial Number SG349, had been manufactured in Florida before officers recovered it in Montana. The Court finds that the KelTec 9mm had been transported from one state to another. The Government proved beyond a reasonable doubt that the KelTec 9mm pistol had been transported from one state to another, that is, that the KelTec was in or affected interstate commerce. *United States v. Hanna*, 55 F.3d 1456, 1462 (9th Cir.

1995) (The history of a firearm's location in one state before being located in another is "sufficient to establish a past connection between the gun and interstate commerce."); Manual of Model Criminal Jury Instructions for the District Courts of the Ninth Circuit, No. 14.16, Firearms—Unlawful Possession (18 U.S.C. § 922(g)(1)) (2022 ed., updated June 2024).

43. The Government met the third element through the testimony of Officer Lyons. Officer Lyons testified that Paul LaFournaise had been convicted of a crime carrying a punishment of imprisonment for more than one year. The Government introduced exhibits showing judgments from Montana state courts for Paul LaFournaise's felony convictions entered before May 11, 2024. The Court concludes that Paul LaFournaise had been convicted of a crime punishable by imprisonment for a term exceeding one year at the time he possessed the KalTec 9mm pistol on May 11, 2024. The Government proved beyond a reasonable doubt that when Paul LaFournaise possessed the KelTec 9mm pistol, he had been convicted of a crime punishable by imprisonment for a term exceeding one year.

44. The Government met the fourth element through the testimony of Officer Lyons. Officer Lyons testified that Paul signed the forms explaining the terms of LaFournaise's probation for his felony conviction, and the Government introduced these exhibits. Officer Lyons further testified to LaFournaise's

knowledge that he was prohibited from possessing firearms because of his felony conviction.

45. Even if the Court applied the defendant's reasoning from *Rehaif v. United States* that LaFournaise also must know that his felony conviction placed him in the category of people who are prohibited from possessing firearms, the Government still proved this element beyond a reasonable doubt. *Rehaif v. United States*, 139 S.Ct. 2191, 2200 (2019). The Government introduced a separate condition sheet, signed by LaFournaise, showing that he understood he was prohibited from possessing firearms. The Court concludes that Paul LaFournaise knew he had been convicted of a crime punishable by imprisonment for a term exceeding one year at the time he possessed the KelTec 9mm pistol on May 11, 2024, and that this conviction meant Paul could not possess firearms.

46. The Government proved beyond a reasonable doubt that at the time Paul LaFournaise possessed the KelTec 9mm pistol, LaFournaise knew he had been convicted of a crime punishable by imprisonment for a term exceeding one year.

## VERDICT

After considering the facts presented at trial and making the foregoing conclusions of law, the Court finds:

16

The Government proved all elements of the offense charged in the Indictment beyond a reasonable doubt. Accordingly, the Defendant, Paul Anthony LaFournaise, is GUILTY of possession of a firearm in violation of 18 U.S.C. § 922(g)(1).

DATED this 4th day of December, 2024.

_____
Brian Morris, Chief District Judge
United States District Court